**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ILLINOIS TOOL WORKS INC., | Civil Action No. 20-_____ |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| TERMAX LLC and LISI AUTOMOTIVE SA, | |
| Defendants. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Illinois Tool Works Inc. ("ITW" or "Plaintiff"), through its counsel, hereby demands a jury trial and alleges the following against Defendants Termax LLC ("Termax") and LISI Automotive SA ("LISI Automotive"), collectively ("Defendants"):

## THE PARTIES

1.      Plaintiff ITW is a Delaware corporation and has a principal place of business at 155 Harlem Avenue, Glenview, IL 60025.

2.      On information and belief, as recorded with the Illinois Secretary of State, Defendant Termax LLC is an Illinois company with a principal place of business located at 1155 Rose Road, Lake Zurich, IL 60047.

3.      On information and belief, Defendant LISI Automotive SA is a registered French private company with a principal place of business located at 2 Rue Juvénal Viellard, 90600 Grandvillars, France.

## JURISDICTION AND VENUE

4.      This is an action for patent infringement arising under the patent laws of the United

1

States of America, 35 U.S.C. §1, et. seq., including 35 U.S.C. § 271, and seeks damages and injunctive relief including as provided in 35 U.S.C. §§ 281 and 283-285.

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.      This Court has personal jurisdiction, general and specific, over Termax because Termax has sufficient minimum contacts to establish personal jurisdiction in this district. Termax is an Illinois corporation that resides in this district. Termax has a regular and established place of business in this judicial district and has done and is doing substantial business in this judicial district, both generally and, on information and belief, with respect to the allegations in this Complaint, including Termax's one or more acts of infringement in this judicial district. Termax has purposefully availed itself of the privilege of conducting activities in this judicial district and invoked the benefits and protection of this judicial district by having substantial contacts and regularly and purposefully conducting business in this judicial district, both generally and, upon information and belief, with respect to the allegations in this Complaint.

7.      This Court has personal jurisdiction over LISI Automotive because, on information and belief, LISI Automotive is doing substantial business in this district, including committing one or more acts of infringement, such as at least offering for sale infringing products in this district by marketing and promoting infringing products in the district.  Alternatively, personal jurisdiction over LISI Automotive exists under the federal long-arm provisions of Federal Rule of Civil Procedure 4(k)(2) because LISI Automotive is doing substantial business in the United States, including the foregoing acts of infringement throughout the United States.

8.      Venue is proper in this judicial district as to Defendant Termax under 28 U.S.C. §§ 1391(b), 1391(c), and/or 1400(b) because Defendant Termax is incorporated in the state of Illinois

(i.e., resides therein) and also has a principal place of business in Illinois. Venue over Defendant LISI Automotive is proper under 28 U.S.C. § 1391(c)(3), which provides that a defendant not resident in the United States may be sued in any judicial district.

## FACTUAL BACKGROUND

9.     ITW is one of the world's leading diversified manufacturers of specialized industrial equipment, consumables, and related service businesses. In particular, ITW's automotive OEM segment designs and manufactures innovative fasteners, interior and exterior components, and powertrain and braking systems for OEMs and their top-tier suppliers.

10.     Among its many products, ITW manufactures and sells, through its Deltar division, automotive panel fasteners, plastic rivets, and pin and grommets.

### *The Patent-in-Suit*

11.     Push-in type W-base retainers are used in a variety of connection assemblies to secure automotive components of the assembly. For example, in automobiles such stud-like retainers are used to secure molding or other surface structures to underlying support elements such as body panels, support beams or the like. Such retainers typically include a stem with deflectable wing elements for securing the retainer to the support elements when the stem portion supporting the deflectable wing elements is pushed through an aperture in the support element. During use, as the stem is inserted into the aperture, the deflectable members may be compressed radially inwardly. The deflectable members then may spring outwardly as insertion is completed to lock behind the underside of the support element. Thus, with the head secured to the surface

structure, the retainer forms a connection between the surface structure and the underlying support element.

12.     W-base retainers are typically designed as a component of an overall assembly and work in conjunction with the other components with the goal of establishing and maintaining a "zero gap" condition between the sheet metal panel or other support element and the molding or other surface structure.   To promote the desired "zero gap" condition, the W-base retainers typically provide a continuous pull down or clamp load condition. This constant pull down is intended to provide and maintain the desired "zero gap" condition between the support element and the molding or other surface structure. If this pull down force is compromised by significant force acting in the opposite direction such that the molding or other surface structure does not seat against the sheet metal panel or other support element, an unacceptable gap condition may occur within the final assembled product. Such a gap condition may result in undesired rattling noise as well as in the introduction of dirt and water between the molding or other surface structure and the underlying support structure.

13.     Although retainers as described incorporating concave skirts and/or seals have been used successfully to limit squeaks and rattles and to inhibit the penetration of moisture past the retainer, further improvements were desirable.  Installing a seal as a separate part is cumbersome and awkward, complicating installation of the retainer.  If installed on the retainer in advance, the seal can be dislodged even if properly placed on the retainer.  In automotive assembly plants, a retainer missing a seal may not be detected and may be installed on the article in which it is used inadvertently.  And a seal that is held in place between a retainer head and a support panel may experience a build, stack up condition as compression force is applied, which results in a counteracting upward force against the head which may partially offset the pull-down force

provided by the deflectable wings. In some cases, the presence of seal elements which are compressed between the retain head and the support panel may block the lower collar feature of the retainer from getting close enough to the underlying sheet metal panel to establish the desired "zero gap" condition betwent the sheet metal panel and the overlying molding or other surface structure. That is, the compressed seal in stack-up condition may act in the manner of a spacing shim holding the retainer head further away than intended from the sheet metal panel or other underlying support element.

14. ITW engineers in response developed solutions to the problem of a push-in type retainer having a functional sealing feature that can maintain a "zero gap" condition, while not experiencing a build, stack up condition that may reduce the clamp load force. ITW received several patents on its new, novel, and innovative connection assembly.

15. For example, on June 16, 2020, the United States Patent and Trademark Office ("the USPTO") duly and legally issued U.S. Patent No. 10,683,882 ("the '882 patent"), which is entitled "Push Through Retainer Connection With Integrated Hinging Seal." ITW is the owner by assignment of the '882 patent. A true and accurate copy of the '882 patent is attached hereto as Exhibit 1.

16. The '882 patent discloses and claims a connection assembly, including a press-in retainer with a seal, configured to join a surface element to an underlying support structure.

17. The '882 patent claims priority to a previous patent application that was filed on December 9, 2013, which issued as U.S. Pat. No. 9,982,694, which in turn claims priority to a provisional patent application filed on Dec. 19, 2012.

### Defendants' Accused Product

18. Despite ITW's patents and pending patent applications, Defendants Termax and

LISI Automotive make, use, offer to sell, sell, export, and/or import their own push-through connection assembly fasteners, i.e., the Termax Plastic Bird Beak Sealing Fastener (Part Nos. 71216, 71224, and 71225) (hereinafter collectively referred to as "the Accused Products"). Defendants' part numbers 771216, 71224 and 71225 are materially identical in all respects relevant to infringement of the '882 patent.  (*See* Exhibits 2-3.)

19.     An image of an exemplary accused push through connection assembly fastener (Part No. 71216) is below:



**FIGURE 1**

20.     As of the filing date of this Complaint, Defendant Termax advertises its Part Nos. 71216, 71224, and 71225 as being for sale on its "TMX Parts Search Engine" at https://www.termax.com/en/product-catalog/category/9/plastic/bird-beak, as shown in the screen shot below:



| | Part Number | Part Type | Hole Dia. | Panel Thick. | Max. Ins. (lbs.) | Min. Ret. (lbs.) | "A" | "B" | "C" | "D" | "E" | "F" Set-Up | Downloads |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 71214 | Sealing | 8.2 | 0.80 - 1.00 | 11.0 | 60.0 | 13.0 | 18.0 | 8.8 | 20.0 | 4.1 | 3.1 | Best Practice ⬇ Part Print ⬇ |
| | 71216 | Sealing | 9.0 | 0.70 - 1.30 | 10.0 | 75.0 | 12.0x20.0 | 16.3 | 10.5 | 19.3 | 2.6 | 2.6 | Best Practice ⬇ Part Print ⬇ |
| | 71218 | Sealing | 7.4 | 1.00 - 2.00 | 8.0 | 50.0 | 15.0 | 19.1 | 9.2 | 17.0 | 2.75 | 6.5 | Best Practice ⬇ Part Print ⬇ |
| | 71219 | Sealing | 7.4 | 0.70 - 0.90 | 8.0 | 50.0 | 13.0 | 18.5 | 9.0 | 17.0 | 2.5 | 5.4 | Part Print ⬇ |
| | 71224 | Sealing | 7.50 - 8.00 | 0.70 - 1.10 | 12.0 | 60.0 | 10.0 | 14.3 | 9.5 | 19.25 | 1.75 | 2.23 | Best Practice ⬇ Part Print ⬇ |
| | 71225 | Sealing | 7.50 - 8.00 | 0.70 - 1.30 | 12 | 60 | 12.0 | 15.3 | 9.5 | 19.25 | 2.75 | 2.55 | Best Practice ⬇ Part Print ⬇ |
| | F015 | Non-Sealing | 8.8 | 0.70 - 0.90 | 12 | 30 | 16.0 | 21.4 | 10.7 | 14.0 | 3.6 | 1.80 | Part Print ⬇ |
| | Part Num | Part Typ | Hole Dia | Panel Th | Max. Ins. | Min. Ret. | "A" | "B" | "C" | "D" | "E" | "F" Set-U | |

**FIGURE 2**

21.     Images of each of these products on the Termax TMX Parts Search Engine are shown below:



71216            71224            71225

**FIGURE 3**

22.     "Best Practice" and "Part Print" Information describing the Accused Products is also available on Termax's website. A true and accurate print-out of Termax's website relating to the Accused Products as of the filing date of this Complaint is attached hereto as Exhibit 2 (hereinafter "Termax's website").

23.     Termax also advertises the Accused Products for sale in its catalog, available as of the filing date of this Complaint at https://www.termax.com/en/our-products.  A true and accurate

print-out of Termax's catalog, downloaded from its website, is attached hereto as Exhibit 3. Below are images of the Accused Products from Termax's catalog:



**FIGURE 4**



**FIGURE 5**

24.     Defendant LISI Automotive also advertises the Accused Products for sale in its catalog, available as of the filing date of this Complaint at https://www.lisi-automotive.com/en/catalogue-lisi-automotive-interior-exterior-trim/.   A true and accurate print-out of LISI Automotive's catalog, downloaded from its website, is attached hereto as Exhibit 4. Below are images of the Accused Products from LISI Automotive's catalog:



**FIGURE 6**

## COUNT I
## INFRINGEMENT OF THE '882 PATENT

25.     The allegations in preceding paragraphs 1-24 are incorporated by reference as if fully set forth herein.

26.     The photographs in paragraphs 32 to 41 are of a true and accurate sample of Defendants' Bird's Beak Part No. 71216.

27.     ITW owns all right, title, and interest in and to the '882 Patent.

28.     Defendant Termax had knowledge of the '882 patent at least as early as June 19, 2020, when Plaintiff gave Defendant Termax actual notice of its infringement via a notice letter that outlined infringement of at least claim 11 of the '882 patent on an element-by-element basis. On information and belief, Defendant LISI Automotive had knowledge of the '882 patent at least as early as June 19, 2020, because Defendant Termax would have made Defendant LISI Automotive aware of ITW's notice letter on or around the same date given that Defendant LISI Automotive offers for sale the same products (including with the same part numbers).

29.     Defendants have directly infringed, and continue to directly infringe, literally or under the doctrine of equivalents, at least claims 11, 12, 13, and 18 of the '882 patent by making, using, offering for sale, selling, and/or importing into the United States push through connection assembly fasteners including the Accused Products, in violation of 35 U.S.C. § 271.

30.     On information and belief, at least Defendant Termax has also directly infringed and continues to directly infringe claims 1-10, 14-17, and 19-20 of the '882 patent, including by making, offering for sale, selling, or importing infringing fasteners and/or by using infringing fasteners in combination with support structures and/or surface elements, such as during testing and development.

31.     For example, the Accused Products include or meet every single element of at least claim 11 of the '882 patent, literally or under the doctrine of equivalents.

32.     The Accused Products are connection assemblies.  They are described as "fasteners" in Defendants' catalogs.  (*See* Exhibit 3 at p. 19; Exhibit 4 at p. 19.)  The function of the Accused Products as connection assemblies is also apparent in the figures below:

 

FIG. −1−

33.    The Accused Products comprise a press-in retainer including a retainer head and a clip portion protecting from the retainer head, as shown for example in the figures below:

 

34.    The retainer head of the Accused Products includes a first platform, a second platform spaced from the first platform, and a seal disposed at least partially about the second platform, as shown for example in the figures below:

12



35. The Accused Products have a seal having a durometer lower than the durometer of the second platform, which can be at least determined through visual and tactile inspection of product samples of the Accused Products. The seal and second platform are shown in the figures below:



36. The seal of the Accused Products includes a body portion engaging the second platform and a sealing foot projecting from the body portion to a free edge such that the sealing foot is disposed outboard from the second platform, as shown in the figures below:



37.    The Accused Products have a first surface of the sealing foot that forms an obtuse angle relative to a plane of a second surface of the second platform, as shown in the figures below:



38.    The Accused Products have a sealing foot configured to flex readily from the obtuse angle toward a substantially flattened condition about a living hinge while remaining outboard from the second platform.  The claimed flexing of the sealing foot of the Accused Products can be determined at least through visual and tactile inspection of the Accused Products.  The sealing foot, living hinge, and second platform are shown in the figures below:

14



39.     The Accused Products also include or meet every single element of at least dependent claim 12 of the '882 patent, literally or under the doctrine of equivalents.  The Accused Products satisfy independent claim 11 for the reasons discussed above (which are incorporated by reference herein), and also include a retainer head and clip portion that are molded as a unitary structure, as shown in the figures below:



40.     The Accused Products also include or meet every single element of at least claim dependent 13 of the '882 patent, literally or under the doctrine of equivalents.  The Accused Products satisfy independent claim 11 for the reasons discussed above (which are incorporated by reference herein).  In addition, they also include a clip portion that comprises a central support

15

extending from the second platform. The second platform is oriented substantially perpendicular to an axis defined by the central support, and defines a stepped construction including an interior portion and a reduced thickness outer lip with a step between the interior portion and the outer lip. These elements are shown in the figures below:



41.     The Accused Products also include or meet every single element of at least dependent claim 18 of the '882 patent, literally or under the doctrine of equivalents. The Accused Products satisfy independent claim 11 for the reasons discussed above (which are incorporated by reference herein), and also include an annular second platform, as shown in the figures below:



42.     Defendants' part numbers 71224 and 71225 are materially identical to Part Number 71216 in all respects relevant to infringement of the '882 patent. (*See* Exhibits 2-3.) Plaintiff, therefore, incorporates by reference the allegations of paragraphs 26 to 41 above, as if fully set

forth herein and restated with respect to Part Numbers 71224 and 71225.

43. Defendants have also indirectly infringed and continue to indirectly infringe each of the claims of the '882 patent by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to infringement pursuant to 35 U.S.C. § 271(c).

44. On information and belief, in violation of 35 U.S.C. § 271(b), Defendants specifically intended to induce infringement of the '882 patent by their customers and users of the Accused Products and had knowledge that the inducing acts would cause infringement or were willfully blind to the possibility that their inducing acts would cause infringement.

45. Defendant Termax knew of the '882 patent since at least June 19, 2020, when it was identified by Plaintiff to Defendant Termax. Defendant LISI Automotive also knew of the '882 patent since at least June 19, 2020, because on information and belief Defendant Termax notified Defendant LISI Automotive of ITW's notice letter on or around the same date, as discussed above. On information and belief, Defendants' customers directly infringe the '882 patent. For example, when the Accused Products are sold to automotive manufacturers, these customers infringe at least claims 11, 12, 13, and 18, and on information and belief also claims 1-10, 14-17, and 19-20, through the use of the Accused Products to fasten automotive panels. On information and belief, Defendants specifically intend for customers to infringe the '882 patent. On information and belief, Defendants encourage infringement to customers at least by providing product support that instructs users on how to use the Accused Products, including through "Best Practice" documentation on Defendant Termax's website. (*See* Exhibit 2.)

46. On information and belief, despite Defendants' knowledge of the '882 patent and knowledge that customers will necessarily infringe the '882 patent when the Accused Products are used as instructed, Defendants continue to encourage infringement.

47.     Defendants also contribute to infringement of the '882 patent by Defendants' customers in violation of 35 U.S.C. § 271(c).  Defendant Termax knew of the '882 patent since at least June 19, 2020, when it was identified by Plaintiff to Defendant Termax.  Defendant LISI Automotive also knew of the '882 patent since at least June 19, 2020, because on information and belief Defendant Termax notified Defendant LISI Automotive of ITW's notice letter on or around the same date, as discussed above.  On information and belief, Defendants' customers directly infringe the '882 patent.  For example, when the Accused Products are sold to automotive manufacturers, these customers infringe at least claims 11, 12, 13, and 18, and on information and belief also claims 1-10, 14-17, and 19-20, through the use of the Accused Products to fasten automotive panels.  On information and belief, Defendants contribute to this infringement by offering to sell and/or selling within the United States the Accused Products knowing that they constitute a material part of the claimed inventions, knowing that they are especially made or especially adapted for use in infringing the '882 patent, and knowing that the Accused Products are not a staple article or commodity of commerce suitable for substantial non-infringing use.

48.     On information and belief, Defendants' infringement of the '882 patent has been and continues to be willful.  Defendant Termax knew of the '882 patent since at least June 19, 2020, when it was identified by Plaintiff to Defendant Termax.  Defendant LISI Automotive also knew of the '882 patent since at least June 19, 2020, because on information and belief Defendant Termax notified Defendant LISI Automotive of ITW's notice letter on or around the same date, as discussed above.  Defendants have continued to sell the Accused Products, despite Plaintiff's demand to cease-and-desist from doing so, and despite knowing that the Accused Products are covered by the '882 patent.  Defendants have thus sold the Accused Products knowing of the risk of infringement and/or in view of a risk of infringement that was sufficiently obvious that it should

18

have been known to Defendants. Despite this risk, Defendants have deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard to Plaintiff's patent rights. Thus, Defendants' infringing actions have been and continue to be consciously and purposefully wrongful, entitling Plaintiff to treble damages under 35 U.S.C. § 284.

49.     Defendants have committed and continue to commit all of the above acts of infringement without license or authorization.

50.     As a result of Defendants' infringement of the '882 patent, Plaintiff has suffered damages and will continue to suffer damages under 35 U.S.C. § 284.

51.     Under 35 U.S.C. § 283, Plaintiff is entitled to a permanent injunction against further infringement. The injury to Plaintiff is irreparable and will continue unless and until Defendants are enjoined from further infringement. Defendants' wrongful conduct has caused and will continue to cause Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using selling, offering to sell, and/or importing Plaintiff's patented inventions. On information and belief, Defendants and others will continue to infringe the '882 patent unless permanently enjoined by the Court. Considering the balance of the hardships and the public interest, unless a permanent injunction is issued enjoining Defendants and their agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the '882 Patent, Plaintiff will be greatly and irreparably harmed.

## **JURY DEMAND**

52.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff respectfully demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of Plaintiff and against Defendants as follows:

A.     That U.S. Patent No. 10,683,882 be judged to have been directly and indirectly infringed by Defendants, and that such infringement be judged to be willful infringement;

B.     That the Court permanently enjoin Defendants and their subsidiaries, parents, divisions, directors, officers, agents, servants, employees and all other persons in active concert or privity or in participation with them, from making, using, selling, offering for sale, importing, or distributing any infringing push through fastener products and from infringing, inducing infringement, and contributing to the infringement of U.S. Patent No. 10,683,882, and enjoining Defendants from assisting, inducing, or aiding or abetting any other person or entity in infringing U.S. Patent No. 10,683,882;

C.     That the Court enter judgment for Plaintiff and against Defendants and award Plaintiff all damages, together with interest and costs, for Defendants' infringement of U.S. Patent No. 10,683,882, and that the damages award be trebled under 35 U.S.C. § 284.

D.     That the Court enter judgment and an order requiring Defendants to provide accountings and to pay supplemental damages to Plaintiff including without limitation prejudgment and postjudgment interest;

E.     A judgment that this case is exceptional and an award to Plaintiff of its costs, expenses, and reasonable attorneys' fees under 35 U.S.C. § 285 and all other applicable statutes and rules in common law that would be appropriate; and

F.     That Plaintiff be awarded such other and further relief as this Court may deem just and proper under the circumstances.

Dated: September 11, 2020

/s/ *Eligio C. Pimentel*
Eligio C. Pimentel
Christopher M. Scharff
Amber J. Carpenter
**MCANDREWS, HELD & MALLOY, LTD**
500 West Madison St.
Suite 3400
Chicago, IL 60661
Tel: (312) 775-8000
Fax: (312) 775-8100
epimentel@mcandrews-ip.com
cscharff@mcandrews-ip.com
acarpenter@mcandrews-ip.com