**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ILLINOIS TOOL WORKS INC., <br><br> Plaintiff, <br><br> v. <br><br> TERMAX COMPANY, <br><br> Defendant. | Civil Action No. 1:20-cv-05416 <br><br> The Honorable Virginia M. Kendall <br><br> **JURY TRIAL DEMANDED** |

## DEFENDANT TERMAX COMPANY'S FIRST AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS TO THE FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Defendant, Termax Company ("Defendant" or "Termax") responds to the First Amended Complaint ("FAC") for Patent Infringement of Plaintiff Illinois Tool Works Inc. ("ITW" or "Plaintiff") as follows:

### THE PARTIES

1.      Defendant at present is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 1, and on that basis denies them.

2.      Termax admits that its principal place of business is located at 1155 Rose Road, Lake Zurich, Illinois 60047 and further states that it changed its name from "Termax LLC" to "Termax Company" and was incorporated in the State of Delaware in 2020.  With respect to any remaining allegations, denied.

3.      LISI Automotive SA has been dismissed from this action.  The allegations of the Paragraph are not directed to Termax and no response is required.

## JURISDICTION AND VENUE

4.      Admitted that this purports to be an action for patent infringement under the patent laws of the United States of America, 35 U.S.C. §1, et. seq., and denies that Plaintiff is entitled to any relief.

5.      Admitted.

6.      Admitted that this Court has personal jurisdiction over Termax but denied that Termax has infringed any valid or enforceable claims asserted by Plaintiff or that Plaintiff is otherwise entitled to any relief.

7.      LISI Automotive SA has been dismissed from this action.  The allegations of the Paragraph are not directed to Termax and no response is required.

8.      Admitted that venue is proper in this judicial district as to Defendant Termax. LISI Automotive SA has been dismissed from this action.  The remaining allegations of the Paragraph are not directed to Termax and no response is required.

## FACTUAL BACKGROUND

9.      Defendant at present is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 9, and on that basis denies them.

10.      Defendant at present is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 10, and on that basis denies them.

*The Patents-in-Suit*

11.      Termax admits that the push-in type retainers described were in use and known more than one year before the filing of the provisional application to which the '882 Patent claims priority.

12.      Termax admits that push-in type retainers were known and used more than one year before the filing of the provisional application for the '882 Patent as a component of an

overall assembly and worked in conjunction with the other components. Termax admits that depending upon the application in which such fasteners were used by vehicle manufacturers, such manufactures had the goal in certain such applications of establishing and maintaining a "zero gap" condition between the sheet metal panel or other support element and the molding or other surface structure. Termax admits that such push-in retainers can provide a continuous downward pull which may assist in maintaining a "zero gap" condition, depending upon the other design choices made by the vehicle manufacturer. The allegations in this paragraph fail to provide sufficient information concerning the hypothetical "force acting in the opposite direction" or the details of the particular configuration of elements in such a hypothetical arrangement, and Termax is without sufficient information to admit or deny the categorical statements concerning the consequences of such forces made in this paragraph and demands strict proof thereof. Termax admits that a gap between the sheet metal panel or other support element and the molding or other surface structure can lead to undesired rattling noise as well as in the introduction of dirt and water between the molding or other surface structure and the underlying support structure. Termax otherwise denies the allegations of this paragraph.

13.     Termax admits that push-in type retainers were in use and known more than one year before the filing of the provisional application for the '882 Patent, that incorporated concave skirts and/or seals to limit successfully squeaks and rattles and to inhibit the penetration of moisture past the retainer. The allegations in this paragraph fail to provide sufficient information concerning the hypothetical installation of a seal as a separate part, including the details of the particular configuration of elements in such a hypothetical arrangement, and Termax is without sufficient information to admit or deny the categorical statements concerning the degree of awkwardness, burden or complications thereof, and therefore demands proof thereof. Termax

admits that seals that are separable from push-in retainers can be dislodged and that the absence of a seal may go undetected under certain circumstances in an automotive assembly plant and be installed inadvertently. The allegations in this paragraph further fail to provide sufficient information concerning the hypothetical seal "held in place between a retainer head and a support panel," the configuration thereof or details of the application in which employed, or the purported nature and source of the alleged "stack up conditions," and Termax is without sufficient information to admit or deny the categorical statements concerning the purported effects of this unspecified "compressed seal," and therefore demands proof thereof. Termax otherwise denies the allegations of this paragraph.

14.     Defendant lacks sufficient knowledge or information with regard to the purported actions and motivations of ITW engineers alleged in Paragraph 14 to admit or deny them, and on that basis denies them. Termax denies further that it was necessary for ITW engineers to develop push-in type fasteners having a functional sealing feature that could maintain a "zero gap" condition, asserting that such push-in retainers were in use and known more than one year before the filing of the provisional application for the '882 Patent. Termax denies that ITW received patents on connection assemblies that were new, novel or innovative. Termax otherwise denies the allegations of this paragraph.

15.     Admitted that U.S. Patent No. 10,683,882 ("the '882 patent") states on its face that it (1) was issued on June 16, 2020, (2) is entitled "Push Through Retainer Connection With Integrated Hinging Seal," (3) purports to be owned by ITW and (4) a copy of the '882 patent is purportedly attached to ITW's complaint. Termax denies that the issuance of the '882 Patent was proper, legal, or due and asserts that the claims of that patent are invalid. Defendant at

present is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in Paragraph 15, and on that basis denies them.

16.     Admitted that the '882 patent purports to disclose and claim a connection assembly, including a press-in retainer with a seal, configured to join a surface element to an underlying support structure. Termax denies the allegations of this Paragraph to the extent they are not supported by the language of the claims of that patent, as properly construed.

17.     Admitted that the '882 patent, on its face, purports to claim priority to a previous patent application that was filed on December 9, 2013, which purportedly issued as U.S. Patent No. 9,982,694, which in turn purports to claim priority to a provisional patent application filed on Dec. 19, 2012. With respect to any remaining allegations in paragraph 17, denied.

18.     Admitted that U.S. Design Patent No. D897,826 ("the D'826 patent") states on its face that it (1) issued on October 6, 2020, (2) is entitled "Fastener," (3) purports to be owned by ITW, and (4) a copy of the D'826 patent is purportedly attached to ITW's complaint. Termax denies that the issuance of the D'826 Patent was proper, legal, or due and asserts that the claims of that patent are invalid and unenforceable. Defendant at present is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in Paragraph 18, and on that basis denies them.

19.     Termax denies that the D'826 Patent discloses and claims a non-functional ornamental design for a fastener. Admitted that the D'826 patent purports to claim a design as shown in Figures 1-4 of Exhibit 2 and described in its section captioned DESCRIPTION. Admitted that the Figures reproduced in Paragraph 19 of the FAC appear to be accurate reproductions of Figures 1-4 of the D'826 patent. With respect to any remaining allegations in Paragraph 19, denied.

5

20.     Admitted that paragraph 20 accurately quotes the D'826 patent, with the exceptions that the quoted portion of the description uses the words "for the purpose" (not "for the purposes" or "for pthe purpose").

21.     Admitted that the D'826 patent purports to claim priority to the '882 patent, which in turn purports to claim priority to U.S. Patent No. 9,982,694.

*Defendants' Accused Product*

22.     Admitted that Termax makes, tests, offers to sell, sells and exports Plastic Bird Beak Sealing Fasteners bearing Part Nos. 71216, 71224, and 71225.  Termax denies that these parts infringe the '882 Patent and denies any remaining allegations in Paragraph 22, denied. With respect to any remaining allegations against LISI Automotive, LISI Automotive has been dismissed from this action and these allegations are not directed to Termax and no response is required.  Defendant denies any remaining allegations of this Paragraph.

23.     Denied.

24.     Defendant at present is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 24, and on that basis denies them.

25.     Termax admits that that screen shot is taken from the alleged URL as of the alleged date.  Termax denies the remaining allegations of this Paragraph, including the characterization of the information provided in the screen shot.

26.     Admitted.

27.     Admitted that "Best Practice" and "Part Print" Information describing Plastic Bird Beak Sealing Fasteners bearing Part Nos. 71216, 71224, and 71225 are available on Termax's website, and that Exhibit 3 to the FAC includes accurate reproductions of these products from Termax's website.  With respect to any remaining allegations in Paragraph 27, denied.

28.     Admitted that Termax includes the Plastic Bird Beak Sealing Fasteners bearing Part Nos. 71216, 71224, and 71225 in catalogs, including a catalog available at https://www.termax.com/en/our- products, an accurate copy of which was attached as Exhibit 4 to the FAC, and that accurate reproductions of portions of certain pages of that catalog were provided in Paragraph 28 of the FAC.  Termax denies the remaining allegations of this Paragraph, including the characterization of the catalog available at the recited URL.

29.     With respect to these allegations against LISI Automotive, LISI Automotive has been dismissed from this action and these allegations are not directed to Termax and no response is required and, as confirmed by the United States Federal District Court for the Northern District of Illinois, Termax denies that LISI Automotive has offered the accused products for sale in the United States.

**COUNT I**
**INFRINGEMENT OF THE '882 PATENT**

30.     Termax incorporates each of its responses to Compl. ¶¶ 1-29 as though fully set forth herein.

31.     Defendant at present is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 31, and on that basis denies them.

32.     Defendant at present is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 32, and on that basis denies them.

33.     Admitted that Termax gained knowledge of the '882 Patent upon receipt of a letter dated June 19, 2020 from ITW's counsel.  Termax denies that it has infringed the '882 Patent and denies any remaining allegations of this Paragraph.

34.     Denied.

35.     Denied.

36.     Denied.

37.     Admitted that Termax describes its products bearing Part Nos. 71216, 71224, and 71225 as Plastic Bird Beak Sealing Fasteners in its catalogs.  Termax denies that the accused products are "connection assemblies" or that such function is apparent from the figures.  To the extent Paragraph 37 uses, either expressly or impliedly, any language found in any asserted claims of the '882 Patent, Defendant incorporates the admissions and denials set forth in its LPR 2.3 Non-Infringement Contentions as if fully restated herein, including any amendments thereto. Termax denies (1) that it has infringed any valid or enforceable claims asserted by Plaintiff and (2) that Plaintiff is otherwise entitled to any relief.  Defendant denies any remaining allegations set forth in Paragraph 37.

38.     Termax admits that the accused products are press-in retainers, but denies that they include a clip portion as claimed in the '882 Patent.  Defendant at present is without knowledge or information sufficient to form a belief as to the truth of that assertion that the photograph is of a Termax part and therefore denies any allegations with respect thereto set forth in Paragraph 38.  To the extent Paragraph 38 uses, either expressly or impliedly, any language found in any asserted claims of the '882 Patent, Defendant incorporates the denials and admissions set forth in its LPR 2.3 Non-Infringement Contentions as if fully restated herein, including any amendments thereto.  Termax denies (1) that it has infringed any valid or enforceable claims asserted by Plaintiff and (2) that Plaintiff is otherwise entitled to any relief. Termax denies any remaining allegations of this Paragraph.

39.     Termax admits that the accused products are press-in retainers that include spaced platforms and a seal provided around one of the platforms.  Defendant at present is without knowledge or information sufficient to form a belief as to the truth of that assertion that the

photograph is of a Termax part and therefore denies any allegations with respect thereto set forth in Paragraph 39.  To the extent Paragraph 39 uses, either expressly or impliedly, any language found in any asserted claims of the '882 Patent, Defendant incorporates the denials and admissions set forth in its LPR 2.3 Non-Infringement Contentions as if fully restated herein, including any amendments thereto.  Termax denies (1) that it has infringed any valid or enforceable claims asserted by Plaintiff and (2) that Plaintiff is otherwise entitled to any relief.  Termax denies any remaining allegations of this Paragraph.

40.     Termax admits that the accused products are press-in retainers that include a seal having a durometer lower than the durometer of the second platform.  Defendant at present is without knowledge or information sufficient to form a belief as to the truth of that assertion that the photograph is of a Termax part and therefore denies any allegations with respect thereto set forth in Paragraph 40.  To the extent Paragraph 40 uses, either expressly or impliedly, any language found in any asserted claims of the '882 Patent, Defendant incorporates the denials and admissions set forth in its LPR 2.3 Non-Infringement Contentions as if fully restated herein, including any amendments thereto.  Termax denies that it has infringed any valid or enforceable claims asserted by Plaintiff or that Plaintiff is otherwise entitled to any relief.  Termax denies any remaining allegations of this Paragraph.

41.     Termax admits that the accused products are press-in retainers that include an umbrella-shaped seal used in Termax products for well over a year before the filing date of the provisional application to which the '882 Patent claims priority.  Defendant at present is without knowledge or information sufficient to form a belief as to the truth of that assertion that the photograph is of a Termax part and therefore denies any allegations with respect thereto set forth in Paragraph 41.  To the extent Paragraph 41 uses, either expressly or impliedly, any language

found in any asserted claims of the '882 Patent, Defendant incorporates the denials and admissions set forth in its LPR 2.3 Non-Infringement Contentions as if fully restated herein, including any amendments thereto. Termax denies (1) that it has infringed any valid or enforceable claims asserted by Plaintiff and (2) that Plaintiff is otherwise entitled to any relief. Termax denies any remaining allegations of this Paragraph.

42.     Termax admits that the accused products are press-in retainers that include an umbrella-shaped seal used in Termax products for well over a year before the filing date of the provisional application to which the '882 Patent claims priority. Defendant at present is without knowledge or information sufficient to form a belief as to the truth of that assertion that the photograph is of a Termax part and therefore denies any allegations with respect thereto set forth in Paragraph 42. To the extent Paragraph 42 uses, either expressly or impliedly, any language found in any asserted claims of the '882 Patent, Defendant incorporates the denials and admissions set forth in its LPR 2.3 Non-Infringement Contentions as if fully restated herein, including any amendments thereto. Termax denies (1) that it has infringed any valid or enforceable claims asserted by Plaintiff and (2) that Plaintiff is otherwise entitled to any relief. Termax denies any remaining allegations of this Paragraph.

43.     Termax admits that the accused products are press-in retainers that include an umbrella-shaped seal used in Termax products for well over a year before the filing date of the provisional application to which the '882 Patent claims priority, and that, when under force, the umbrella-shape of the seal causes it to flex readily to a flattened position. Defendant at present is without knowledge or information sufficient to form a belief as to the truth of that assertion that the photograph is of a Termax part and therefore denies any allegations with respect thereto set forth in Paragraph 43. To the extent Paragraph 43 uses, either expressly or impliedly, any

language found in any asserted claims of the '882 Patent, Defendant incorporates the denials and admissions set forth in its LPR 2.3 Non-Infringement Contentions as if fully restated herein, including any amendments thereto. Termax denies (1) that it has infringed any valid or enforceable claims asserted by Plaintiff and (2) that Plaintiff is otherwise entitled to any relief. Termax denies any remaining allegations of this Paragraph.

44.     Defendant at present is without knowledge or information sufficient to form a belief as to the truth of that assertion that the photograph is of a Termax part and therefore denies any allegations with respect thereto set forth in Paragraph 44. To the extent Paragraph 44 uses, either expressly or impliedly, any language found in any asserted claims of the '882 Patent, Defendant incorporates the denials and admissions set forth in its LPR 2.3 Non-Infringement Contentions as if fully restated herein, including any amendments thereto. Termax denies (1) that it has infringed any valid or enforceable claims asserted by Plaintiff and (2) that Plaintiff is otherwise entitled to any relief. Termax denies any remaining allegations of this Paragraph.

45.     Defendant at present is without knowledge or information sufficient to form a belief as to the truth of that assertion that the photograph is of a Termax part and therefore denies any allegations with respect thereto set forth in Paragraph 45. To the extent Paragraph 45 uses, either expressly or impliedly, any language found in any asserted claims of the '882 Patent, Defendant incorporates the denials and admissions set forth in its LPR 2.3 Non-Infringement Contentions as if fully restated herein, including any amendments thereto. Termax denies (1) that it has infringed any valid or enforceable claims asserted by Plaintiff and (2) that Plaintiff is otherwise entitled to any relief. Termax denies any remaining allegations of this Paragraph.

46.     Defendant at present is without knowledge or information sufficient to form a belief as to the truth of that assertion that the photograph is of a Termax part and therefore denies

11

any allegations with respect thereto set forth in Paragraph 46. To the extent Paragraph 46 uses, either expressly or impliedly, any language found in any asserted claims of the '882 Patent, Defendant incorporates the denials and admissions set forth in its LPR 2.3 Non-Infringement Contentions as if fully restated herein, including any amendments thereto. Termax denies (1) that it has infringed any valid or enforceable claims asserted by Plaintiff and (2) that Plaintiff is otherwise entitled to any relief. Termax denies any remaining allegations of this Paragraph.

47. Denied.

48. Denied.

49. Denied.

50. Termax incorporates its response to Paragraph 33, above. LISI Automotive SA has been dismissed from this action. The allegations of the Paragraph are not directed to Termax and no response is required. Termax denies (1) that it or its customers have infringed any valid or enforceable claims asserted by Plaintiff, (2) that it has encouraged infringement by anyone through instructions on how to use the accused products or otherwise, and (3) that Plaintiff is otherwise entitled to any relief. With respect to any remaining allegations, denied.

51. Denied.

52. Termax incorporates its response to Paragraph 33, above. LISI Automotive SA has been dismissed from this action. The allegations of the Paragraph are not directed to Termax and no response is required. Termax denies (1) that it or its customers have infringed any valid or enforceable claims asserted by Plaintiff, (2) that it has encouraged infringement by anyone, through instructions on how to use the accused products or otherwise, and (3) that Plaintiff is otherwise entitled to any relief. With respect to any remaining allegations, denied.

53.     Termax incorporates its response to Paragraph 33, above.  LISI Automotive SA has been dismissed from this action.  The allegations of the Paragraph are not directed to Termax and no response is required.  Termax denies (1) that it has infringed any valid or enforceable claims asserted by Plaintiff, (2) that any alleged infringement has been willful, and (3) that Plaintiff is otherwise entitled to any relief.  With respect to any remaining allegations, denied.

54.     Denied.

55.     Denied.

56.     Denied.

## COUNT II
## INFRINGEMENT OF THE 'D826 DESIGN PATENT

57.     Termax incorporates each of its responses to Compl. ¶¶ 1-56 as though fully set forth herein.

58.     Defendant at present is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 58, and on that basis denies them.

59.     Denied.

60.     Denied.

61.     Defendant at present is without knowledge or information sufficient to form a belief as to the truth of that assertion that the photograph is of a Termax part and therefore denies any allegations with respect thereto set forth in Paragraph 61.  Termax denies that it has infringed any valid or enforceable claims asserted by Plaintiff, and that Plaintiff is otherwise entitled to any relief.

62.     Denied.

63.     Denied.

64.     Denied.

13

65.     Denied.

66.     Denied.

## JURY DEMAND

67.     The allegations of the Paragraph are not directed to Termax and no response is required.

## RESPONSE TO PRAYER FOR RELIEF

Termax denies that it infringes or has infringed, either directly or indirectly, any valid and enforceable claim of the '882 patent and/or D'826 patent. Termax further denies that ITW is entitled to any of the relief requested against Termax as set forth in the Prayer for Relief, or any other relief of any kind.

## AFFIRMATIVE DEFENSES

Termax alleges and asserts the following defenses in response to the allegations in the Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. In addition to the affirmative defenses described below, Termax specifically reserves all rights to allege additional defenses that become known through the course of discovery. For its affirmative defenses to the Complaint, Termax alleges as follows:

## FIRST AFFIRMATIVE DEFENSE
## (NON-INFRINGEMENT)

Termax has not infringed and is not infringing, directly or indirectly, any valid and enforceable asserted claim of the asserted patents.

## SECOND AFFIRMATIVE DEFENSE
## (INVALIDITY)

One or more asserted claims of the asserted patents is invalid and/or unenforceable for failure to comply with one or more provisions of 35 U.S.C. §§ 101, 102, 103, 112 and/or 171.

## FOURTH AFFIRMATIVE DEFENSE
## (WAIVER, LACHES AND ESTOPPEL)

ITW is barred from recovery, in whole or in part, by the doctrines of waiver, laches, or estoppel, including prosecution history estoppel.

## FOURTH AFFIRMATIVE DEFENSE
## (LIMITATIONS ON DAMAGES)

ITW may not recover some or all of the alleged damages, including but not limited to pre-suit damages, as a consequence of, among other things, the requirements of 35 U.S.C. §§ 286 and 287.

## RESERVATION OF DEFENSES

Termax reserves the right to assert additional defenses in the event that discovery or other analyses indicate that additional defenses are warranted.

WHEREFORE, Termax denies that it infringes or has infringed, either directly or indirectly, any valid and enforceable claim of the asserted patent, and further denies that ITW is entitled to any judgment against Termax whatsoever. Termax asks that the Complaint be dismissed with prejudice, that judgment be entered for Termax, and that Termax be awarded its attorneys' fees and costs incurred in this action, together with such other relief the Court deems appropriate.

## JURY TRIAL DEMANDED

Termax respectfully requests a trial by jury on all issues so triable.

## COUNTERCLAIMS

Defendant Termax, for its Counterclaims against ITW, states as follows:

### JURISDICTION

1. These Counterclaims arise under the United States patent laws and the declaratory judgment statute. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1338(a), 1367, 1400, 2201 and 2202.

### FACTUAL BACKGROUND

2. In its Complaint, ITW asserts that Termax has infringed and does infringe the '882 and D'826 patents, directly and/or indirectly.

3. The '882 and D'826 patents are invalid, unenforceable and have not been and are not infringed by Termax, either directly or indirectly.

4. Consequently, there is an actual case or controversy between the parties over the infringement, validity, and/or enforceability of the'882 and D'826 patents.

### COUNT I
### DECLARATORY JUDGMENT OF NON-INFRINGEMENT ('882 Patent)

5. Termax restates and incorporates by reference its allegations in paragraphs 1-4 of its Counterclaims.

6. Termax has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '882 patent.

7. Under 28 U.S.C. §§ 2201 and 2202, and Title 35 of the United States Code, Termax is entitled to a declaratory judgment that it has not infringed, contributed to the infringement of, or induced infringement of any valid and enforceable claim of the '882 Patent, whether directly, indirectly, literally, under the doctrine of equivalents, or willfully.

**COUNT II**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT (D'826 Patent)**

8.      Termax restates and incorporates by reference its allegations in paragraphs 1-4 of its Counterclaims.

9.      Termax has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the D'826 Patent.

10.     Under 28 U.S.C. §§ 2201 and 2202, and Title 35 of the United States Code, Termax is entitled to a declaratory judgment that it has not infringed, contributed to the infringement of, or induced infringement of any valid and enforceable claim of the D'826 Patent, whether directly, indirectly, literally, under the doctrine of equivalents, or willfully.

**COUNT III**
**DECLARATORY JUDGMENT OF INVALIDITY ('882 Patent)**

11.     Termax restates and incorporates by reference its allegations in paragraphs 1-4 of its Counterclaims.

12.     The claims of the '882 Patent are invalid for failure to comply with the statutory requirements of one or more of the provisions in Title 35 of the United States Code, including without limitation §§ 101, 102, 103, and/or 112.

13.     Under 28 U.S.C. §§ 2201 and 2202, and Title 35 of the United States Code, Termax is entitled to a declaratory judgment that the asserted claims of the '882 Patent are invalid.

**COUNT IV**
**DECLARATORY JUDGMENT OF INVALIDITY (D'826 Patent)**

14.     Termax restates and incorporates by reference its allegations in paragraphs 1-4 of its Counterclaims.

15.    The claim of the D'826 Patent is invalid for failure to comply with the statutory requirements of one or more of the provisions in Title 35 of the United States Code, including without limitation §§ 101, 102, 103, 112 and/or 171.

16.    Under 28 U.S.C. §§ 2201 and 2202, and Title 35 of the United States Code, Termax is entitled to a declaratory judgment that the asserted claim of the D'826 Patent is invalid.

### COUNT V
### DECLARATORY JUDGMENT OF UNENFORCEABILITY ('882 Patent)

17.    Termax restates and incorporates by reference its allegations in paragraphs 1-4 of its Counterclaims.

18.    The '882 Patent is unenforceable.

19.    On February 6, 2019, a power of attorney (signed June 20, 2018 by Ernest W. Torain, Deputy General Counsel, Intellectual Property) was filed appointing Quarles & Brady LLP (Customer Number 26711) as attorneys for U.S. Patent Application 15/987,986.

20.    Nicholas P. Schmidbauer of Quarles & Brady LLP served as the attorney for U.S. Patent Application 15/987,986 from that point forward, and did not file any information disclosure statements (IDS's) in U.S. Patent Application 15/987,986.

21.    On April 27, 2020, Nicholas Schmidbauer filed U.S. Design Patent Application 29/732,671 (the "Design Application") as a Continuation of U.S. Patent Application 15/987,986 (which issued June 16, 2020 as the '882). The Design Application included a power of attorney signed by Chris Rauch, Chief Intellectual Property Counsel for ITW. Customer number 160504 designated in the power of attorney is associated with "QUARLES & BRADY LLP/ITW Automotive OEM" and included several ITW patent attorneys, namely Jay Saltzman, Erin Fox, Christopher Rauch, Maurice Finnegan, Jeffrey Walker, and Michal Gawlik.

22.     With the April 27, 2020 Design Application, Mr. Schmidbauer filed a Request for Expedited Examination of a Design Application under 37 CFR 1.155, which requires: (1) drawings in compliance with 37 CFR 1.84; (2) the applicant conduct a preexamination search; (3) and a request including (i) a fee under 37 CFR 1.17(k); and (ii) A statement that the preexamination search was conducted. The statement also must indicate the field of the search and include an information disclosure statement in compliance with 37 CFR 1.98.

23.     The form used for the request for expedited examination includes a line to list related applications, on which application 15/987,986 was identified.

24.     On April 27, 2020, Mr. Schmidbauer submitted an IDS in the prosecution of the Design Application. Among other prior art documents, Mr. Schmidbauer listed U.S. Patent Publication 2005/0150087 A1 and 2010/0098515 A1.

25.     Despite being counsel of record in application 15/987,986, and despite the fact that application was still pending, Mr. Schmidbauer failed to advise the examiner in that application of either U.S. Patent Publication 2005/0150087 A1 or 2010/0098515 A1 (the "Uncited References").

26.     These Uncited References were material to the prosecution of application 15/987,986. The applicant in application 15/987,986 had argued that the prior art failed "to disclose or suggest a connection assembly comprising a press-in retainer and a seal, … wherein the seal is configured to flex about a living hinge provided between a body portion and a sealing foot thereof[.]" The withheld Uncited References were contrary to the positions taken by the applicant before the examiner.

27.     These Uncited References render the patented claims invalid and the failure to cite them to the examiner render the '882 patent unenforceable.

28. Under 28 U.S.C. §§ 2201 and 2202, and Title 35 of the United States Code, Termax is entitled to a declaratory judgment that the '882 Patent is unenforceable.

29. This is an exceptional case under 35 U.S.C. § 285 because ITW filed its Complaint with knowledge of the facts stated in this Counterclaim.

**COUNT VI**
**DECLARATORY JUDGMENT OF UNENFORCEABILITY (D'826 Patent)**

30. Termax restates and incorporates by reference its allegations in paragraphs 1-4 of its Counterclaims.

31. The D'826 Patent is unenforceable.

32. The D'826 Patent claims "[t]he *ornamental* design for a fastener, as shown and described." Figures 1 and 4 of that patent are shown below:



FIG. 4

33. "Where a design patent contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *OddzOn Prods. Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997; *see also Lanard Toys Ltd. v. Dolgencorp LLC, et al.*, 958 F.3d 1337, 1342 (Fed. Cir. 2020).

34.     Where a patented design includes both functional and non-functional elements, primarily functional elements are not considered part of the ornamental elements of the construed claim for purposes of determining validity over prior art. *See Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1294 (Fed. Cir. 2010) (affirming claim construction that factored out functional elements of a design patent to a multi-function tool driven by utility, such as the handle, hammerhead, jaw, and crowbar); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993); *Kreative Power, LLC v. Monoprice, Inc.*, 2015 WL 971387, *11 (N.D. Cal. 2015); *see also* MEPE 1504.02 ("[T]hose features of the design which are functional and/or hidden during end use may not be relied upon to support patentability.") (citations omitted).

35.     "Aspects of a claimed design are considered functional if they are 'dictated by their functional purpose.'" *Kreative Power, LLC*, 2015 WL 971387, *7 (quoting *Richardson*, 597 F.3d at 1294).  In determining whether a claimed element is functional, the Federal Circuit has considered a number of factors: (1) the availability of alternative designs; (2) whether the protected design represents the best design; (3) whether alternative designs would adversely affect the utility of the specified article; (4) whether there are any concomitant utility patents; (5) whether the advertising touts particular features of the design as having specific utility; and (6) whether there are any elements in the design or an overall appearance clearly not dictated by function.  *See Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1329-30 (Fed. Cir. 2015)); *see also Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, 930 F.3d 1314, 1319 (Fed. Cir. 2019) (quoting *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1456 (Fed. Cir. 1997)).

36.     U.S. Patent Application 11/891,700 (the "'700 Application"), entitled Fastener

Assembly, was filed by Illinois Tool Works Inc. on August 13, 2007, naming as inventors Derek

Scroggie, Robert Osterland, and Brett J. Jurily.  On March, 20, 2008, the '700 Application

published March 20, 2008 as US 2008/0066266 A1. Figure 10 of that application is shown

below:



37.     On August 29, 2007, a corresponding international patent application claiming

priority to the '700 Application was filed as PCT/US2007/077064 (the "PCT'064 Application"),

which published March 20, 2008 as WO 2008/033667 A1.

38.     The shape and configuration of the lower platform, any distinguishing

characteristics of which lower platform are not visible to an ordinary observer at any point

during the useful life of the product, beginning after completion of its manufacture or assembly

and ending with the ultimate destruction, loss, or disappearance of the article, is the only

noteworthy difference between the design of D'826 and that disclosed in the  '700 Application

and PCT'064 Applications.  The shape and configuration of the lower stepped circular platform

of the D'826 Patent are dictated primarily by function.

39.     The lower platform of the D'826 Patent is intended to mate with a circular

perimeter seal.  Ex. 1005 at ¶¶52-55.  As shown in Figure 1 (annotated) of the D'826 Patent, the

circular shape of the lower platform is dictated by the circular internal geometry of the that

perimeter seal:

22



FIG. 1

D'826 Patent, Fig. 1 (annotated).

40.     Where a structure must fit within corresponding unclaimed structure, "any aesthetic appeal … is the inevitable result of having a shape that is dictated solely by functional concerns." *Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563, 1566 (Fed. Cir. 1996). That a different seal could be imagined that would compel a different configuration for the corresponding lower platform does not render the lower platform depicted in the D'286 Patent non-functional. *Id.* at 1566 ("An attempt to create a key blade with a different design would necessarily fail because no alternative blank key blade with fit the corresponding lock.")

41.     The D'826 Patent claims priority to two U.S. utility patents, U.S. Patent Nos. 9,982,694 and 10,683,882.  Both of these utility patents are entitled "PUSH THROUGH RETAINER CONNECTION **WITH INTEGRATED HINGING SEAL**."  (Emphasis added). Plaintiff's priority claim rests on its assertion that the ITW's utility patents, to which the D'826 Patent claims priority, disclosed the same invention claimed in the D'826 Patent.

42.     The earlier application must "reasonably convey to one of ordinary skill in the art that the inventors possessed the later-claimed subject matter when they filed the earlier application." *In re Curtis*, 354 F.3d at 1351; *see also Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed.Cir.1998).

43.     In the common specification for both of these utility applications, and throughout their prosecution, inventor Scroggie and attorneys representing Plaintiff, including Mr. Schmidbauer, emphasized that the invention was an improved seal designed to avoid "stack-up" problems caused by prior art fasteners employing rigid seals or those dependent upon compression between the support panel the underside of the fastener's lower platform.  The inventor Scroggie and attorneys representing Plaintiff, including Mr. Schmidbauer, acknowledged that W-base retainers of the type depicted in these priority applications were known in the prior art.  The inventor Scroggie and attorneys representing Plaintiff, including Mr. Schmidbauer, emphasized that the invention was embodied in an improved integral seal that avoided the stack up issues in prior art fasteners.  *See, e.g.,* '882 Patent, 3:7-11 ("The present disclosure provides advantages and alternatives over the prior art by providing a connection assembly including a push-in type retainer having a functional sealing feature that does not experience a build, stack up condition that may reduce the clamp load force.")

44.     Inventor Scroggie executed an acknowledgement under penalty of perjury that "he had reviewed and understood the content of the application." Mr. Scroggie's oath was submitted in support of the applications for the '694, '882, and D'826 Patents. In his acknowledgment, Mr. Scroggie swore under oath that he was "aware of the duty to disclose" information to the Patent Office as set forth in 37 C.F.R. §1.56.

45.     On or about January 21, 2020, Mr. Schmidbauer filed remarks with the U.S. Patent Office in connection with the application for the '882 Patent in support of amendments submitted in an effort to overcome the Patent Office's rejections of the application on the basis of a prior art publication (*i.e.* U.S. Pat. Pub. No. 2005/0079-33 ("Benedetti")).  In those remarks, Mr. Schmidbauer emphasized that "Benedetti fails to disclose or suggest a connection assembly comprising a press-in retainer **and a seal**, wherein the retainer comprises a retainer head and a clip portion, and **wherein the seal is configured to flex about a living hinge** provided between a body portion and a sealing foot thereof from an unstressed condition toward a fully flexed condition as the clip portion urges the retainer downwardly into an acceptance opening **in order to create a substantially zero gap**, abutting relation between the surface element and the support structure."  Mr. Schmidbauer emphasized the essentiality of the described seal, noting that "[t]he sealing foot is configured to flex from the unstressed condition toward the fully flexed condition in order **to create the substantially zero gap** between the surface element and the support structure in response to the clip portion pressing against the interior surface of the acceptance opening to urge the retainer downwardly into the acceptance opening."

46.     During prosecution of the '694 and '882 Patents, Plaintiff repeatedly distinguished prior art on the grounds that such art lacked a separate seal disposed about the lower collar having the depicted construction.  *See, e.g.,* Response Under 37 C.F.R. §1.111 filed Feb. 2, 2018, Appl. No. 14/652,819, at 9; Amendment filed Jan. 21, 2020, Appl. No. 15/987,986, at 11 (noting that prior art failed to disclose a seal configured to readily flex or a lower platform having a stepped construction that is at least partially covered by a seal) (signed by Mr. Schmidbauer).

47.     The claims of these utility applications further emphasize that the seal is an integral and essential component of the disclosed invention.  *See, e.g.*, '882 Patent, Claim 1 ("wherein the sealing foot is configured to flex from the unstressed condition toward the fully flexed condition **in order to create the substantially zero gap** between the surface element and the support structure[.]")(Emphasis added).

48.     Neither the '694 nor '882 Patents disclose a fastener used without a seal.

49.     Neither the '694 nor the '882 Patents disclose a fastener in which a seal is optional.

50.     The lower platform disclosed in both the '694 and '882 Patents functions to mate with and support a seal.

51.     The specific claims of Plaintiff's utility patents further confirm that the geometry of this lower platform is not ornamental, but utilitarian.  *See, e.g.,* '694 Patent, Claim 12 ("The connection assembly as recited in claim 10, wherein the lower collar has a stepped construction including an interior portion and a reduced thickness outer annular lip with a step between the interior portion and the outer annular lip[.]"); '882 Patent, Claim 20 (reciting second platform having "stepped construction that includes an interior portion and a reduced thickness outer lip with a step between the interior portion and the outer lip," wherein the second platform is "annular"). The stepped construction of the annular lower collar is designed to most effectively retain the integral seal and ensure that it remains affixed at all times to the lower collar.  *See, e.g.,* '882 Patent, 2:34-39 (noting that claimed seal avoided the issues presented by prior art seals that we separate from the fastener, and those seals that could be dislodged).

52.     The lower platform's stepped circular shape serves to provide the best adhesion for the overlying seal.  Additionally, a stepped indentation on the upper surface of the lower

26

circular platform—oriented thereby towards the channel that receives the molding's dog-house connector—serves to maintain a flush surface preventing interference between the seal and the doghouse connector when inserted.

53.     The circular geometry of the lower platform provides the ideal shape for seals designed to seal circular openings into which the fastener is installed, types which are commonly used in automotive and other applications.

54.     Furthermore, the non-ornamental nature of the lower platform's configuration is confirmed by the fact the configuration of the lower platform is hidden from view by the peripheral seal.  "It has been held repeatedly that articles which are concealed or obscured in normal use are not proper subjects for design patents, since their appearance cannot be a matter of concern." *In re Stevens*, 173 F.3d 1015, 1016 (C.C.P.A. 1949); *see also* MPEP 1504.01 ("a design not visible in its normal and intended use [is] evidence that its appearance is not a matter of concern.")  The geometry of this lower platform is not the subject of Plaintiff's advertising.

55.     On April 27, 2020, on behalf of Plaintiff, Mr. Schmidbauer filed the application for the D'826 Patent.  Mr. Schmidbauer advised the patent office that the application was a continuations application of the application for the '882 Patent, which itself was a continuation of the application for the '694 Patent.

56.     With the April 27, 2020 design patent application, Mr. Schmidbauer filed a Request for Expedited Examination of a Design Application under 37 CFR 1.155.  In his request, Mr. Schmidbauer represented that a search had been conducted for prior art.  Mr. Schmidbauer represented to the Patent Office that this search had included prior art cited in the application for the '882 Patent, for which he was, at the time, the prosecuting attorney.  The application for the

'882 Patent incorporated by reference the '694 Patent and U.S. Provisional Application No. 61/739,604 (the "P'604 Application").

57.     In his request, Mr. Schmidbauer acknowledged that the applications for the '694 and '882 Patents were related to the application for the D'826 Patent. Mr. Schmidbauer, however, did not call to the examiner's attention the P'604 Application, to which both the '694 and '882 Patents claimed priority.

58.     Mr. Schmidbauer filed an Information Disclosure Statement with his request for expedited examination. Mr. Schmidbauer did identify neither the '700 Application, its PCT counterpart, PCT'064, or the publications of each (collectively, the "Design Patent Uncited Art").

59.     U.S. Provisional Application 61/739,604, entitled "Push Through Fastener with Integral Seal," was filed December 19, 2012 and lists as Mr. Scroggie as one of the inventors and applicants.

60.     The P'604 Application included figures of fasteners identical to those disclosed in the '770 Application and PCT'064. In the figures shown below, the applicants, including Mr. Scroggie, acknowledged that these fasteners were "PRIOR ART":



61.     Commercial embodiments of the fasteners identified as "prior art" in the P'604 Application, as also reflected in the '700 Application, its PCT counterpart, PCT'064, and the publications of each, were offered for sale and/or sold by Plaintiff more than one year before the earliest date to which the D'826 Patent claims priority. These commercial embodiments, and the noted applications and corresponding publications are collectively referred to herein as the "Design Patent Uncited Art."

62.     Mr. Schmidbauer and the inventor, Mr. Scroggie were each aware of the offer for sale, filing and publication of the Design Patent Uncited Art occurred more than one year before the earliest date to which the D'826 Patent claims priority. Mr. Scroggie was the inventor of the fastener embodied in the Design Patent Uncited Art. Mr. Schmidbauer was the attorney of record responsible for the prosecution of '882 Patent which expressly claimed priority to the P'604 Application, would have been aware if its contents, including its admission that the

described fastener was prior art, and represented to the patent office that he had conducted a prior art search of art relating to the '882 Patent in support of his request to expedite consideration of the application for the D'826 Patent.

63.     At least Mr. Schmidbauer and the inventor, Mr. Scroggie, failed to disclose to the examiner any of the Design Patent Uncited Art during prosecution of application for the D'826 Patent, despite their knowledge of that art. Both had a duty to disclose this art to the examiner.

64.     In addition to the oath he executed and which was submitted in connection with the applications for the '694, '882 and D'826 Patents, Mr. Scroggie has been listed as an inventor on at least 13 other granted U.S patents, and he would have been familiar with the duty to disclose prior art.

65.     The Design Patent Uncited Art is material to the patentability of the design claimed in D'826 Patent. With the exception of the geometry of the lower platform, the fastener disclosed in the Design Patent Uncited Art is essentially identical to that claimed in the D'826 Patent. Because the particular geometry of the lower platform in the D'826 Patent is dictated by its function, and is concealed or obscured from view during normal use of the article and the lower platform's contribution to the overall appearance of the article is not a matter of concern to the ordinary observer, it does not form a part of the patented claim and cannot serve to distinguish the D'826 Patent from the Design Patent Uncited Art.

66.     The Design Patent Uncited Art is not cumulative of any other prior art disclosed to the patent examiner in connection with the application for the D'826 Patent.

67.     The design claimed in the D'826 Patent, as properly construed, is not properly patentable in light of the Design Patent Uncited Art.

68.     Both Mr. Scroggie and Mr. Schmidbauer knew that the Design Patent Uncited Art was material to the application for the D'826 Patent.  Mr. Scroggie understood that his claim was limited to "[t]he *ornamental* design for a fastener, as shown and described" in the application for the D'826 Patent. Mr. Scroggie, as the purported inventor of the fastener described in the D'826 Patent, and as an engineer employed by Plaintiff since June 2000 having responsibilities for fastener product design, fastener manufacturing, and support of customer applications for Plaintiff's fasteners, including those described in the D'826, '694 and '882 Patents (*see* https://www.linkedin.com/in/derek-scroggie-68728378/details/experience/ (accessed Nov. 17, 2022)),  knew that the particular geometry of the lower platform in the D'826 Patent is dictated by its function, that it was not "ornamental," and that it did not, as a consequence form part of the "ornamental design" for the fastener claimed by him and his co-inventors in the D'826 Patent.

69.     Mr. Schmidbauer understood that the D'826 Patent claim encompassed only ornamental aspects of the design shown in that patent, and that it did not encompass aspects that were dictated by function. *See, e.g.,* https://www.quarles.com/nicholas-p-schmidbauer/ (accessed Nov. 17, 2022) (noting that Mr. Schmidbauer has "extensive knowledge of utility and design prosecution at the United States Patent & Trademark Office.")  Based upon the statements made in the '882 Patent and during its prosecution, as well as his knowledge of mechanical engineering, and his reportedly regular representation of clients in the automotive industry with respect to fasteners, Mr. Schmidbauer was aware that the particular geometry of the lower platform in the D'826 Patent is dictated by its function.

70.     Mr. Scroggie and Mr. Schmidbauer each appreciated that the only patentable distinction between the fastener depicted in the Design Patent Uncited Art and the design

described in the D'826 Patent was the particular geometry of the lower platform. The single most reasonable inference for their failure to disclose the Design Patent Uncited Art to the examiner reviewing the application for the D'826 Patent was that they intended to deprive the examiner of that art with the goal of ensuring the allowance of that application.

71.     This failure to disclose the Design Patent Uncited Art renders the D'826 Patent unenforceable.

72.     Under 28 U.S.C. §§ 2201 and 2202, and Title 35 of the United States Code, Termax is entitled to a declaratory judgment that the D'826 Patent is unenforceable.

**PRAYER FOR RELIEF**

WHEREFORE, Termax respectfully requests that this Court order judgment in its favor on each and every Counterclaim set forth above, and award it relief including, but not limited to, the following:

(a)     Dismissal of all of ITW's claims against Termax with prejudice;

(b)     Entry of judgment declaring that the claims the '882 and D'826 patents are not infringed by Termax;

(c)     Entry of judgment declaring that the claims of the '882 and D'826 patents are invalid;

(d)     Entry of judgment declaring that the claims of the '882 and D'826 patents are unenforceable;

(e)     An injunction permanently enjoining ITW and its officers, agents, servants, attorneys, and all persons in active concert or participation with them, from bringing or threatening to bring any suit or charge against Termax relating to alleged infringement of the '882 and D'826 patents;

(f)     A declaration that this action is an exceptional case under 35 U.S.C. § 285 and an award to Termax of its attorneys' fees incurred in defending this action; and

(g)     Such other and further relief as this Court may deem just and proper under the circumstances.

## JURY DEMAND

Termax hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil

Procedure.

Dated: November 18, 2022

Respectfully submitted,

*/s/ Thomas L. Duston*

Thomas L. Duston (Bar No. 6196612)
Jonathan C. Hughley (Bar No. 6306204)
Raymond R. Ricordati III (Bar No. 6278318)
Chelsea M. Murray (Bar No. 6333119)
**MARSHALL, GERSTEIN & BORUN LLP**
233 South Wacker Drive
6300 Willis Tower
Chicago, Illinois 60606-6357
Telephone: (312) 474-6300
Facsimile: (312) 474-0448
tduston@marshallip.com
jhughley@marshallip.com
rricordati@marshallip.com
cmurray@marshallip.com

*Attorneys for Defendant Termax LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on this 18th day of November, 2022, I caused DEFENDANT TERMAX COMPANY'S FIRST AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS TO THE FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT to be filed electronically with using the CM/ECF system which sent notification of such filing to all counsel of record.

By:     */s/  Thomas L. Duston*
        Thomas L. Duston