**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| ILLINOIS TOOL WORKS INC.,<br><br>      Plaintiff,<br><br>v.<br><br>TERMAX COMPANY,<br><br>      Defendant. | Civil Action No. 1:20-cv-05416<br>Honorable Virginia M. Kendall<br><br>**JURY TRIAL DEMANDED** |

## SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Pursuant to Fed. R. Civ. P. 15(a)(2) and the written agreement of counsel (*see* D.I. 104 and Tr. of 2/13/23 Hearing), Plaintiff Illinois Tool Works Inc. ("ITW" or "Plaintiff"), through its counsel, hereby demands a jury trial and alleges the following against Defendant Termax Company ("Termax"):

## THE PARTIES

1.      Plaintiff ITW is a Delaware corporation and has a principal place of business at 155 Harlem Avenue, Glenview, IL 60025.

2.      On information and belief, as recorded with the Illinois Secretary of State, Defendant Termax Company is a Delaware corporation with a principal place of business located at 1155 Rose Road, Lake Zurich, IL 60047.

## JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the patent laws of the United States of America, 35 U.S.C. §1, et. seq., including 35 U.S.C. § 271, and seeks damages and injunctive relief including as provided in 35 U.S.C. §§ 281 and 283-285.

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.     This Court has personal jurisdiction, general and specific, over Termax because Termax has sufficient minimum contacts to establish personal jurisdiction in this district. Termax is an Illinois corporation that resides in this district. Termax has a regular and established place of business in this judicial district and has done and is doing substantial business in this judicial district, both generally and, on information and belief, with respect to the allegations in this Second Amended Complaint, including Termax's one or more acts of infringement in this judicial district. Termax has purposefully availed itself of the privilege of conducting activities in this judicial district and invoked the benefits and protection of this judicial district by having substantial contacts and regularly and purposefully conducting business in this judicial district, both generally and, upon information and belief, with respect to the allegations in this Second Amended Complaint.

6.     Venue is proper in this judicial district as to Defendant Termax under 28 U.S.C. §§ 1391(b), 1391(c), and/or 1400(b) because Defendant Termax has a principal place of business in Illinois.

## FACTUAL BACKGROUND

7.     ITW is one of the world's leading diversified manufacturers of specialized industrial equipment, consumables, and related service businesses.  In particular, ITW's automotive OEM segment designs and manufactures innovative fasteners, interior and exterior components, and powertrain and braking systems for OEMs and their top-tier suppliers.

8.     Among its many products, ITW manufactures and sells, through its Deltar division, automotive panel fasteners, plastic rivets, and pin and grommets.

***The Patents-in-Suit***

9.      Push-in type W-base retainers are used in a variety of connection assemblies to secure automotive components of the assembly.  For example, in automobiles such stud-like retainers are used to secure molding or other surface structures to underlying support elements such as body panels, support beams or the like.  Such retainers typically include a stem with deflectable wing elements for securing the retainer to the support elements when the stem portion supporting the deflectable wing elements is pushed through an aperture in the support element. During use, as the stem is inserted into the aperture, the deflectable members may be compressed radially inwardly.  The deflectable members then may spring outwardly as insertion is completed to lock behind the underside of the support element. Thus, with the head secured to the surface structure, the retainer forms a connection between the surface structure and the underlying support element.

10.      W-base retainers are typically designed as a component of an overall assembly and work in conjunction with the other components with the goal of establishing and maintaining a "zero gap" condition between the sheet metal panel or other support element and the molding or other surface structure.  To promote the desired "zero gap" condition, the W-base retainers typically provide a continuous pull down or clamp load condition. This constant pull down is intended to provide and maintain the desired "zero gap" condition between the support element and the molding or other surface structure. If this pull down force is compromised by significant force acting in the opposite direction such that the molding or other surface structure does not seat against the sheet metal panel or other support element, an unacceptable gap condition may occur within the final assembled product. Such a gap condition may result in undesired rattling noise as well as in the introduction of dirt and water between the molding or other surface structure and the

underlying support structure.

11.     Although retainers as described incorporating concave skirts and/or seals have been used successfully to limit squeaks and rattles and to inhibit the penetration of moisture past the retainer, further improvements were desirable.  Installing a seal as a separate part is cumbersome and awkward, complicating installation of the retainer.  If installed on the retainer in advance, the seal can be dislodged even if properly placed on the retainer.  In automotive assembly plants, a retainer missing a seal may not be detected and may be installed on the article in which it is used inadvertently.  And a seal that is held in place between a retainer head and a support panel may experience a build, stack up condition as compression force is applied, which results in a counteracting upward force against the head which may partially offset the pull-down force provided by the deflectable wings.  In some cases, the presence of seal elements which are compressed between the retain head and the support panel may block the lower collar feature of the retainer from getting close enough to the underlying sheet metal panel to establish the desired "zero gap" condition betweent the sheet metal panel and the overlying molding or other surface structure.  That is, the compressed seal in stack-up condition may act in the manner of a spacing shim holding the retainer head further away than intended from the sheet metal panel or other underlying support element.

12.     ITW engineers in response developed solutions to the problem of a push-in type retainer having a functional sealing feature that can maintain a "zero gap" condition, while not experiencing a build, stack up condition that may reduce the clamp load force.  ITW received several patents on its new, novel, and innovative connection assembly.

13.     For example, on October 6, 2020, the USPTO duly and legally issued U.S. Design Patent No. D897,826 ("the 'D826 patent"), which is entitled "Fastener."  ITW is the owner by

4

assignment of the 'D826 patent. A true and accurate copy of the 'D826 patent is attached hereto as Exhibit 1.

14.     The 'D826 design patent discloses and claims the non-functional ornamental design for a fastener, which is described and shown from multiple perspectives in Figures 1-4 (see Exhibit 1) and is shown below:



15.     Among other things, the 'D826 patent description specifies: "The fastener of FIGS. 1-4 includes portions illustrated in dash-dash-dash lines for the purposes of illustrating unclaimed subject matter that forms no part of the claimed design. FIGS. 2-4 include additional dash-dash-dash lines that are included for pthe purpose of illustrating unclaimed environmental structure,

which forms no part of the claimed design." (*See* Exhibit 1 at Cover.)

16.     The 'D826 patent claims priority to U.S. Patent No. 10,683,882 ("the '882 patent"), which in turn claims priority to U.S. Patent No. 9,982,694 ("the '694 patent"), which has an effective filing date of December 9, 2013.

17.     On February 14, 2023, the United States Patent and Trademark Office ("the USPTO") duly and legally issued U.S. Patent No. 11,578,740 ("the '740 patent"), which is entitled "Push Through Retainer Connection With Integrated Hinging Seal." ITW is the owner by assignment of the '740 patent. A true and accurate copy of the '740 patent is attached hereto as Exhibit 2.

18.     The '740 patent discloses and claims a press-in retainer with a seal.

19.     The '740 patent claims priority to the '882 patent, which in turn claims priority to the '694 patent, which in turn claims priority to a provisional patent application filed on Dec. 19, 2012.

### *Defendant's Accused Product*

20.     Despite ITW's issued patents and pending patent applications, Defendant Termax has in the past and continues presently to make, use, offer to sell, sell, export, and/or import its own push-through connection assembly fasteners, including  Plastic Bird Beak Sealing Fastener Part Nos. 71224, 71225, 71216, and other fasteners identified in ITW's Initial Infringement Contentions (previously served in this case) regarding the '882 patent and 'D826 patent (dated January 22, 2021) and/or ITW's Final Infringement Contentions (previously served in this case) regarding the 'D826 patent (dated December 20, 2022).  These products (and all structurally similar products) are hereinafter collectively referred to as "the '740 Patent Accused Products").  The '740 Patent Accused Products are materially identical in all respects relevant to infringement

of the '740 patent, i.e., the structure and use of the '740 Patent Accused Products falls within the scope of the claims of the '740 patent.

21.     At least Plastic Bird Beak Sealing Fastener Part No. 71216 and the fastener shown at DEF-T00001784 (as shown and described in ITW's December 20, 2022 Final Infringement Contentions regarding the 'D826 patent), are also fasteners with an ornamental design that is identical and/or substantially similar to the ornamental design disclosed, described, and/or claimed in the 'D826 patent. These products (and all structurally similar products) are hereinafter also referred to as "the 'D826 Patent Accused Products."

22.     An image of push through connection assembly fastener Part No. 71216 is below:



**FIGURE 1**

23.     As of the filing date of this Second Amended Complaint, Defendant Termax advertises at least its Part Nos. 71216, 71224, and 71225 as being for sale on its "TMX Parts Search Engine" at https://www.termax.com/en/product-catalog/category/9/plastic/bird-beak, as shown in the screen shot below:



| | Part Number ▲ | Part Type | Hole Dia. | Panel Thick. | Max. Ins. (lbs.) | Min. Ret. (lbs.) | "A" | "B" | "C" | "D" | "E" | "F" Set-Up | Downloads |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 71214 | Sealing | 8.2 | 0.80 - 1.00 | 11.0 | 60.0 | 13.0 | 18.0 | 8.8 | 20.0 | 4.1 | 3.1 | Best Practice ⬇ / Part Print ⬇ |
| | 71216 | Sealing | 9.0 | 0.70 - 1.30 | 10.0 | 75.0 | 12.0x20.0 | 16.3 | 10.5 | 19.3 | 2.6 | 2.6 | Best Practice ⬇ / Part Print ⬇ |
| | 71218 | Sealing | 7.4 | 1.00 - 2.00 | 8.0 | 50.0 | 15.0 | 19.1 | 9.2 | 17.0 | 2.75 | 6.5 | |
| | 71219 | Sealing | 7.4 | 0.70 - 0.90 | 8.0 | 50.0 | 13.0 | 18.5 | 9.0 | 17.0 | 2.5 | 5.4 | Part Print ⬇ |
| | 71224 | Sealing | 7.50 - 8.00 | 0.70 - 1.10 | 12.0 | 60.0 | 10.0 | 14.3 | 9.5 | 19.25 | 1.75 | 2.23 | Best Practice ⬇ / Part Print ⬇ |
| | 71225 | Sealing | 7.50 - 8.00 | 0.70 - 1.30 | 12 | 60 | 12.0 | 15.3 | 9.5 | 19.25 | 2.75 | 2.55 | Best Practice ⬇ / Part Print ⬇ |
| | F015 | Non-Sealing | 8.8 | 0.70 - 0.90 | 12 | 30 | 16.0 | 21.4 | 10.7 | 14.0 | 3.6 | 1.80 | Part Print ⬇ |
| | Part Num | Part Typ | Hole Dia | Panel Th | Max. Ins. | Min. Ret. | "A" | "B" | "C" | "D" | "E" | "F" Set-U | |

**FIGURE 2**

24.     Images of each of these products on the Termax TMX Parts Search Engine are shown below:



| 71216 | 71224 | 71225 |

**FIGURE 3**

25.     As of the filing of this Second Amended Complaint, Termax has also at least made and/or used the fastener shown in documentation produced by Termax at DEF-T00001784 (as shown and described in ITW's December 20, 2022 Final Infringement Contentions regarding the '826 patent).[1]

---

[1] Termax has designated information regarding this fastener as CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY.  ITW therefore has not attached these documents as exhibits.

26.     "Best Practice" and "Part Print" Information describing at least Termax's Part Nos. 71216, 71224, and 71225 is also available on Termax's website. A true and accurate print-out of Termax's website relating to these products as of the filing date of this First Amended Complaint is attached hereto as Exhibit 3 (hereinafter "Termax's website").

27.     Termax also advertises at least Termax Part Nos. 71216, 71224, and 71225 for sale in its catalog, available as of the filing date of this Second Amended Complaint at https://www.termax.com/en/our-products.   A true and accurate print-out of Termax's catalog, downloaded from its website, is attached hereto as Exhibit 4.  Below are images of Termax Part Nos. 71216, 71224, and 71225 from Termax's catalog:



**FIGURE 4**



**FIGURE 5**



**FIGURE 6**

## COUNT I
## INFRINGEMENT OF THE '740 PATENT

28.     The allegations in preceding paragraphs 1-27 are incorporated by reference as if fully set forth herein.

29.     Attached as Exhibit 5 are true and accurate copies of photographs of a product sample of Termax's Part No. 71216.

30.     Termax's Part No. 71216 is exemplary of the '740 Patent Accused Products, which each contain the same relevant features and functions for purposes of infringement of the '740 Patent.

31.     ITW owns all right, title, and interest in and to the '740 Patent.

32.     Termax had knowledge of the '740 patent at least as early as the date of its issuance (February 14, 2023).  On February 6, 2023, ITW gave Termax actual notice that the '740 patent was set to issue on February 14, 2023, and that the Termax products previously accused of infringing the '882 patent infringed the '740 patent.

33.     Termax has directly infringed, and continues to directly infringe, literally or under the doctrine of equivalents, claims 1-20 of the '740 patent by making, using, offering for sale, selling, and/or importing into the United States push through connection assembly fasteners including the '740 Patent Accused Products, in violation of 35 U.S.C. § 271.

34.     For example, the '740 Patent Accused Products include or meet every single element of at least claim 1 of the '740 patent, literally or under the doctrine of equivalents.

35.     The '740 Patent Accused Products are press-in retainers. They are described as "fasteners" for various automotive components (e.g., door trim, console, and trim) in Termax's catalog.  (*See* Exhibit 4 at p. 19.) The function of the '740 Patent Accused Products as press-in retainers is also apparent in the exemplary photograph below:



36.    The '740 Patent Accused Products comprise a retainer head and a seal disposed at least partially about the collar:



37.    The '740 Accused Products have a clip portion projecting from the collar, as shown for example in the figures below:



38.     The seal of the '740 Patent Accused Products includes a main body engaging the collar and a sealing foot projecting at an obtuse angle from a distal surface of the main body to a free edge when in an unstressed condition such that the sealing foot is disposed entirely outboard from the collar, as shown in the figures below:





39.     The '740 Patent Accused Products have a sealing foot that is contiguous with the main body:



40.     The '740 Patent Accused Products have a seal wherein the obtuse angle is facing the clip portion, as shown in the figures below:





41.     The '740 Patent Accused Products also have a seal wherein the sealing foot is configured to flex from the unstressed condition toward a substantially flattened condition about a living hinge located at an intersection of the sealing foot and body portion while remaining entirely outboard from the main body, as shown in the figures below:



42. The '740 Patent Accused Products also have a seal wherein, in the substantially flattened condition, the obtuse angle between the sealing foot and the distal surface of the main body approaches a flat contiguous surface:



43.     Termax's part numbers 71224, 71225, and the additional fastener identified in ITW's Final Infringement Contentions regarding the 'D826 patent are materially identical to Part Number 71216 in all respects relevant to infringement of the '740 patent. Plaintiff, therefore, incorporates by reference the allegations of paragraphs 35-42 above, as if fully set forth herein and restated with respect to Part Numbers 71224 and 71225.

44.     Termax has also indirectly infringed and continue to indirectly infringe each of the claims of the '740 patent by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to infringement pursuant to 35 U.S.C. § 271(c).

45.     On information and belief, in violation of 35 U.S.C. § 271(b), Termax specifically intended to induce infringement of the '740 patent by their customers and users of the '740 Patent Accused Products and had knowledge that the inducing acts would cause infringement or were willfully blind to the possibility that their inducing acts would cause infringement.

46.     Termax knew of the '740 patent since at least February 14, 2023, which is when this patent issued.  Termax's customers directly infringe the '740 patent.  For example, when the

'740 Patent Accused Products are sold to automotive manufacturers, these customers infringe at least claims 1-20, through the use of the '740 Patent Accused Products to fasten automotive panels. On information and belief, Termax specifically intends for customers to infringe the '740 patent. On information and belief, Termax encourages infringement to customers at least by providing product support that instructs users on how to use the '740 Patent Accused Products, including through "Best Practice" documentation on Termax's website. (*See* Exhibit 3.)

47.     On information and belief, despite Termax's knowledge of the '740 patent and knowledge that customers will necessarily infringe the '740 patent when the '740 Patent Accused Products are used as instructed, Termax continues to encourage infringement.

48.     Termax also contributes to infringement of the '740 patent by Termax's customers in violation of 35 U.S.C. § 271(c). Termax knew of the '740 when it issued on February 14, 2023. Termax's customers directly infringe the '740 patent. For example, when the '740 Patent Accused Products are sold to automotive manufacturers, these customers infringe at least claims 1-20, through the use of the '740 Patent Accused Products to fasten automotive panels. On information and belief, Termax contributes to this infringement by offering to sell and/or selling within the United States the '740 Patent Accused Products knowing that they constitute a material part of the claimed inventions, knowing that they are especially made or especially adapted for use in infringing the '740 patent, and knowing that the '740 Patent Accused Products are not a staple article or commodity of commerce suitable for substantial non-infringing use.

49.     Termax has committed and continues to commit all of the above acts of infringement without license or authorization.

50.     As a result of Termax's infringement of the '740 patent, ITW has suffered damages and will continue to suffer damages under 35 U.S.C. § 284.

51.     On information and belief, Termax's infringement of the '740 patent has been and continues to be willful.  Defendant Termax knew of the '740 patent since at least February 14, 2023, when it issued, because on February 6, 2023, ITW gave Termax actual notice that the '740 patent was set to issue on February 14, 2023.  Termax also knew that the '740 Accused Products infringe the '740 patent because ITW provided actual notice of such infringement to Termax on February 6, 2023 (after the claims that subsequently issued had been allowed). Further, in designing the '740 Accused Products, Termax copied ITW's own product that is covered by the '740 patent. Termax has  continued to sell the '740 Patent Accused Products despite ITW's demand to cease-and-desist from doing so, and despite knowing that the '740 Patent Accused Products are covered by the '740 patent. Termax has thus sold the '740 Patent Accused Products knowing of the risk of infringement and/or in view of a risk of infringement that was sufficiently obvious that it should have been known to Termax. Despite this risk, Termax has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard to ITW's patent rights. Thus, Termax's infringing actions have been and continue to be consciously and purposefully wrongful, entitling ITW to treble damages under 35 U.S.C. § 284.

52.     Under 35 U.S.C. § 283, ITW is entitled to a permanent injunction against further infringement.  The injury to ITW is irreparable and will continue unless and until Termax is enjoined from further infringement. Termax's wrongful conduct has caused and will continue to cause ITW to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using selling, offering to sell, and/or importing ITW's patented inventions. On information and belief, Termax and others will continue to infringe the '740 patent unless permanently enjoined by the Court.  Considering the balance of the hardships and the public interest, unless a permanent injunction is issued enjoining Termax and its agents, servants,

employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the '740 Patent, ITW will be greatly and irreparably harmed.

## COUNT II
## INFRINGEMENT OF THE 'D826 DESIGN PATENT

53.     The allegations in preceding paragraphs 1-52 are incorporated by reference as if fully set forth herein.

54.     ITW owns all right, title, and interest in and to the 'D826 patent.

55.     On information and belief, Termax has had knowledge of the 'D826 patent since on or around October 6, 2020, which is when the 'D826 patent issued.

56.     At least the 'D826 Patent Accused Products infringe the 'D826 patent.

57.     The photographs below in the "'D826 Patent Accused Product" column are of a true and accurate sample of Termax's Bird's Beak Part No. 71216.  ITW's Final Infringement Contentions regarding the 'D826 patent, dated December 20, 2022, also show true and accurate photographs of an additional Termax product.  (*See also* DEF-T00001784.)

58.     As shown in the following chart, Termax's Bird Beak Part No. 71216 possesses the ornamental design for a fastener as shown, described, and claimed in the 'D826 patent:



| View | 'D826 Patent | 'D826 Patent Accused Product |
|------|-------------|------------------------------|
| 1 | FIG. 1 | |
| 2 | FIG. 2 | |
| 3 | FIG. 3 | |



| | | |
|---|---|---|
| 4 | FIG. 4 | |

59.     Additionally, as shown in ITW's Final Infringement Contentions regarding the 'D826 patent, the additional Termax accused product referenced therein also possesses the ornamental design for a fastener as shown, described, and claimed in the 'D826 patent.

60.     In the eye of an ordinary observer, giving such attention as a purchaser usually gives, the non-functional ornamental design of the fastener claimed in the 'D826 patent and the designs of the 'D826 Patent Accused Products are substantially the same, such that the resemblance would deceive a purchaser, inducing him or her to purchase a 'D826 Patent Accused Product believing it to be the design claimed in the 'D826 patent.

61.     Defendant has directly infringed, and continues to directly infringe the 'D826 patent by making, using, offering for sale, selling, and/or importing into the United States push through connection assembly fasteners including the 'D826 Patent Accused Products in violation of 35 U.S.C. § 271.

62.     As a result of Defendant's infringement of the 'D826 patent, Plaintiff has suffered

and will continue to suffer damages. Plaintiff is entitled to recover damages adequate to compensate it for such infringement, but in no event less than a reasonable royalty under 35 U.S.C. § 284, as well as all remedies for design patent infringement permitted under 35 U.S.C. § 289.

63.    Termax has committed and continue to commit all of the above acts of infringement without license or authorization.

64.    Termax's infringement of the 'D826 patent has been willful. (*See, e.g*., D.I. 48 at 4-5 (denying Termax's motion to dismiss ITW's pleadings of willful infringement of the 'D826 patent).) Termax and ITW are direct competitors. At least the Termax Part No. 71216 product is plainly a copy of the claimed ornamental design of the 'D826 patent, and the additional Termax part number shown in ITW's Final Infringement Contentions regarding the 'D826 patent, is a bad faith attempt to avoid objectively plain infringement through an irrelevant, minor design modification. On information and belief, Termax was aware of the 'D826 patent when it issued in October 2020, yet Termax continued to make, use, sell, and/or offer for sale the Termax Part No. 71216 product despite knowing that it is covered by the Asserted Claim of the 'D826 Patent. Further, Termax should have known that it does not have any reasonable invalidity defenses regarding the 'D826 patent. Moreover, there is no reasonable basis for Termax to believe that the additional Termax part number referenced in ITW's Final Infringement Contentions regarding the 'D826 patent does not infringe the 'D826 patent. An ordinary observer would still believe that product is substantially similar to the claimed 'D826 patent design, including in view of the prior art exchanged between the parties (showing the types of differences in design that would be significant, all of which create a much more visually different overall design compared to Termax's 'D826 Patent Accused Products versus the claimed design of the 'D826 patent).

65.    Under 35 U.S.C. § 283, Plaintiff is entitled to a permanent injunction against further

infringement. The injury to Plaintiff is irreparable and will continue unless and until Defendant is enjoined from further infringement. Termax's wrongful conduct has caused and will continue to cause Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using, selling, offering to sell, and/or importing Plaintiff's patented inventions. On information and belief, Defendant and others will continue to infringe the 'D826 patent unless permanently enjoined by the Court. Considering the balance of the hardships and the public interest, unless a permanent injunction is issued enjoining Defendant and its agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the 'D826 Patent, Plaintiff will be greatly and irreparably harmed.

## JURY DEMAND

66. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff respectfully demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of Plaintiff and against Defendant as follows:

A. That U.S. Design Patent No. D897,826 and U.S. Patent No. 11,578,740 be judged to have been directly and indirectly infringed by Termax, and that such infringement be judged to be willful infringement;

B. That the Court permanently enjoin Termax and its subsidiaries, parents, divisions, directors, officers, agents, servants, employees and all other persons in active concert or privity or in participation with them, from making, using, selling, offering for sale, importing, or distributing any infringing push through fastener products and from infringing, inducing infringement, and contributing to the infringement of U.S. Design Patent No. D897,826 or U.S. Patent No.

11,578,740, and enjoining Termax from assisting, inducing, or aiding or abetting any other person or entity in infringing U.S. Design Patent No. D897,826 or U.S. Patent No. 11,578,740.

C. That the Court enter judgment for Plaintiff and against Termax and award Plaintiff all damages, together with interest and costs, for Termax's infringement of U.S. Design Patent No. D897,826 and U.S. Patent No. 11,578,740, and that such damages award be trebled under 35 U.S.C. § 284.

D. That the Court enter judgment and an order requiring Termax to provide accountings and to pay supplemental damages to Plaintiff including without limitation prejudgment and postjudgment interest;

E. A judgment that this case is exceptional and an award to Plaintiff of its costs, expenses, and reasonable attorneys' fees under 35 U.S.C. § 285 and all other applicable statutes and rules in common law that would be appropriate; and

F. That Plaintiff be awarded such other and further relief as this Court may deem just and proper under the circumstances.

Dated: February 28, 2023    /s/ *Eligio C. Pimentel*
            Eligio C. Pimentel
            Christopher M. Scharff
            **MCANDREWS, HELD & MALLOY, LTD**
            500 West Madison St.
            Suite 3400
            Chicago, IL 60661
            Tel: (312) 775-8000
            Fax: (312) 775-8100
            epimentel@mcandrews-ip.com
            cscharff@mcandrews-ip.com